In re QUAN GIN.

(District Court, N. D. Califor. May 3, 1894.)

No. 10,948.

Chinese Merchants—Firm Name.
  Act Cong. Nov. 3, 1893, provides that a Chinaman seeking entrance into the United States on the ground that he was formerly engaged as a merchant therein must show that his business was conducted "in his own name." *Held*, that such person must be excluded where it appears that the business was conducted under a firm name of which his own name was no part, though there is evidence that he was a partner, and that Chinese merchants do not, in general, conduct business in individual or partnership names.

Exceptions to Special Referee and Examiner's Report, recommending discharge. Exceptions taken by the United States. Exceptions sustained.

Thos. D. Riordan, for petitioner.
Charles A. Garter, U. S. Atty.

MORROW, District Judge. The petition in this case alleges that Quan Gin is unlawfully restrained of his liberty on board the steamship Belgic, on the claim made by the master of the vessel that Quan Gin is not entitled to land, under the provisions of the act of May 6, 1882, and the acts amendatory thereof and supplementary thereto. 22 Stat. 58, 23 Stat. 115, 25 Stat. 504, 27 Stat. 25. The petition alleges that these acts do not apply to him, and that he is entitled to land, and come into the United States, by reason of the fact that he is not a laborer, but a merchant, and a member of the firm of Yow Kee & Co., dealers in general merchandise at No. 17 Waverly place, and for more than one year prior to his departure was a member of the said firm.

A Chinaman claiming to be a merchant, and making application for entrance into the United States on the ground that he was formerly engaged in this country as a merchant, is required by the act of November 3, 1893 (28 Stat. 7), to establish by the testimony of two credible witnesses, other than Chinese, the following facts: (1) That the applicant was engaged, in this country, in buying and selling merchandise, (2) at a fixed place of business; (3) that the business was conducted in his own name (4) for at least one year before his departure from the United States; (5) that during such

year he was not engaged in the performance of any manual labor, except such as was necessary in the conduct of his business as such merchant.

In support of the petition, Quan Gin testifies that he came to this country, first, in the year 1878; that he went to China, the last time, on the steamer Gaelic, in November, 1892; that when he went to China he was in the firm of Yow Kee (general merchandise), No. 17 Waverly place; that the total capital of the firm was $11,000; that there are 10 partners in the firm, including himself, and his interest was and is $1,000; that he had been a member of the firm prior to his departure for China, for seven or eight years; that he was assistant bookkeeper and collector; that Lim You is the manager of the firm, and Lim Lung interpreter. Neither of these two persons so identified as being connected with the firm is produced as a witness, but a Chinaman named Lim See is called, who testifies that he has an interest of $1,000 in the general merchandise firm of Yow Kee, No. 17 Waverly place. This witness is not otherwise identified as belonging to the firm. He testifies, however, that Quan Gin had an interest amounting to $1,000; that Quan Gin was the outside man, and also kept the accounts. T. F. Scott, a drayman, testifies that he knows Quan Gin, who had a store on Clay street, and moved up to Waverly place; that the firm name was "Yow Kee." The witness understood that Quan Gin was a partner; saw him around the store, attending to the business of the firm, and performing such acts as a partner would perform. James W. Waldie, bookkeeper for the American Biscuit Company, testifies that he thinks he has known Quan Gin for six or seven years. He has been buying crackers from the company. He thinks the firm name was "Yow Kee," but whether Quan Gin was a member of the firm he would not swear to, inasmuch as he could not swear to any man being a member of a firm. M. W. Levy, a produce and commission merchant, testifies that he remembers Quan Gin. He had a store on Clay street, and afterwards at No. 17 Waverly place. He does not remember the store name, but, to the best of his knowledge and belief, Quan Gin was a member of the firm. He says he sold the firm potatoes for seed, beans, and strawberry plants, and other little things. No explanation is given why it is alleged in the petition that Quan Gin is a member of the firm of Yow Kee & Co., and no testimony submitted to support that allegation. It seems to be assumed that the testimony that he was a member of the firm of Yow Kee is sufficient, but no explanation is furnished as to how he could be a member of a firm designated by a single individual name. In the argument it was said that Chinese merchants select words of supposed lucky import for company or firm names, but there is no proof upon that point in the case; and the court is not advised, even by counsel, as to whether "Yow Kee" is a word or a name. The fact that in the petition the firm name is given as "Yow Kee & Co." would indicate that the name is not a word, but the business title of two or more individuals associated together. The law requires that, to establish the character of a merchant for a Chinese person seeking to enter the United States, it must appear,

among other things, that the business in which he was engaged
"was conducted in his own name." As there is no proof in this
case that Quan Gin conducted any business in "his own name," and
no explanation is given of the fact that his name does not appear in
the firm name, as is usual in partnerships in this country, he must
be refused a landing, in accordance with the express direction of
the statute. But the question submitted to the court for determina-
tion is as to the character of evidence required to establish the
fact that a merchant is conducting business in his own name.
Must his name appear, either individually or as a partner, in the
conduct of the business? The attention of the court has been
called to an opinion of the attorney general of the United States,
dated April 6, 1894, in which he holds that:

"A Chinese person does not bring himself within the statutory definition
of 'merchant,' unless he conducts his business either in his own name, or in a
firm name of which his own is a part."

It is contended, in opposition to this view of the law, that such
an interpretation will exclude nearly every Chinese merchant seek-
ing to enter the United States, since, as before stated, it is claimed
that Chinese merchants do not, as a rule, conduct their business
affairs in individual or partnership names. This may be so, but,
if it is so, it is a consideration to be addressed to the lawmaking
power, and not to the court.

"The power to exclude or to expel aliens, being a power affecting interna-
tional relations, is vested in the political departments of the government, and
is to be regulated by treaty or by an act of congress, and to be executed by the
executive authority according to the regulations so established, except so far
as the judicial department has been authorized by treaty or by statute, or is
required by the paramount law of the constitution, to intervene." Fong Yue
Ting v. U. S., 149 U. S. 713, 13 Sup. Ct. 1016.

The attorney general gives a most convincing reason for his in-
terpretation of the statute. He says:

"This requirement that a merchant must conduct the business in his own
name can have but one purpose, to wit, that he who is a merchant in fact shall
also be known to be such by the parties with whom he deals, and by the
public generally. That purpose could readily be defeated if it were possible
to conceal his identity by trading under an assumed name, or under the dis-
guise of a 'Co.' "

When it is considered how easy it is for a Chinese person seeking
admission into the United States to claim a small interest in the
business of buying and selling merchandise, it is evident that the
statute has been wisely framed to prevent the admission of Chinese
persons into the United States upon the fictitious and fraudulent
claim that they are merchants. In my opinion, therefore, when an
application is made by a Chinaman for entrance into the United
States on the ground that he was formerly engaged in business in
this country as a merchant, he must, before being admitted, estab-
lish by the testimony of two credible witnesses, other than Chinese,
among other things, that he conducted the business in which he
was engaged, either in his own name, or in a firm name of which
his own is a part. The exceptions of the district attorney to the
report of the commissioner are sustained.